### DUFFY v BONNELL

Ohio Appeals, 7th Dist, Mahoning Co

Decided October, 1937

504

C. H. Dyson, Youngstown, for plaintiff-appellee.

C. F. Scanlon, Akron, for defendant-appellant.

## OPINION

By CARTER, J.

This cause is in this court on appeal on questions of law. The action below was one for personal injuries claimed to have been sustained by appellee. who at the time of receiving said injuries was riding as a guest in an automobile operated at the time by one Nick Tarrantino, at which time Tarrantino's car and defendant's car collided at the intersection of Rush Boulevard and Lowell Avenue in the city of Youngstown. Rush Boulevard runs in a northerly and southerly direction, with a park strip in the center thereof dividing the north and south lanes of traffic thereon. Lowell Avenue runs in a westerly direction from Rush Boulevard and terminates at Rush Boulevard.

The cause came on for trial to the court and jury, resulting in a verdict for plaintiff in the sum of fifteen hundred dollars. Motion for new trial was filed, overruled and judgment entered on the verdict and appeal is prosecuted to this court to reverse this verdict and judgment.

The collision occurred on October 6th, 1935, at about ten o'clock in the morning. The opening between the park strips on Rush Boulevard opposite Lowell Avenue is about fifty feet in width; the width of Lowell Avenue is about twenty-four feet. The lanes of Rush Boulevard running northerly and southerly are about eighteen feet in width. The day was clear and the streets were dry. Tarrantino drove his car north on the north bound or east lane of Rush Boulevard, turned to go west on Lowell Avenue, and he and plaintiff testified that he stopped his car at the south lane of Rush Boulevard at a point opposite the line of west bound traffic on Lowell Avenue. They testify that his car was out past the east curb line of the south lane of Rush Boulevard with the front end so that they could look to the north on Rush Boulevard. They both testify that they saw the car operated by defendant coming south on Rush Boulevard, at which time she was about two hundred and fifty feet to three hundred feet away, and Tarrantino, believing he had sufficient time to cross, put his car into second gear and started across at a speed, as testified to, from five or six miles an hour. He further testifies that his car had reached a point so that the front four or five feet of it was in Lowell Avenue west of the west curb on Rush Boulevard when the defend-

ant's car struck it on the right rear side. He also testifies that the defendant was traveling in the center of the south bound lane on Rush Boulevard at a speed of forty to forty-five miles an hour. The defendant testified that the Tarrantino car was in the center of the lane in which she was travelling and that she turned her car to the right and skidded her wheels for some little distance before her car struck the Tarrantino car; that when the cars collided a very loud noise was created. The force of the collision turned the Tarrantino car around on the dry pavement so that it was headed back east and on the southerly side of Lowell Avenue, the force being so great that Tarrantino was thrown out of the car on to the pavement. The windshield of the Tarrantino car was shattered when Duffy came into collision with it at the time of the accident.

The plaintiff appellee alleges in his petition that the injuries and damages of which he complains were brought about through the careless neglect and unlawful conduct of the defendant proximately operating in that:

1. The defendant at said time and place carelessly, negligently and unlawfully failed and neglected to have her automobile under control so that she could stop the same, divert the course or slacken the speed thereof in time to avoid striking and injuring plaintiff.

2. That the defendant at the time and place carelessly, negligently, recklessly and unlawfully failed and neglected to make any observation whatever to ascertain the presence and dangerous position of plaintiff on the highway although he was in plain sight and could and should have been seen by the defendant in the exercise of ordinary care in season to avoid striking and injuring him.

3. That the defendant at the time and place, carelessly, negligently and unlawfully operated her automobile at a greater speed than would permit the same to be stopped within the assured clear distance ahead.

4. That the defendant at the time and place carelessly, negligently and unlawfully operated her automobile at a speed that was greater than was reasonable and proper without having regard for the width, traffic, use and general and usual rules of the highway so as to endanger the life and limb of this plaintiff.

5. That the defendant at the time and place carelessly and negligently, after she

saw, or in the exercise of ordinary care ought to have seen, the presence and dangerous position of plaintiff on the intersection, failed and neglected to stop her automobile or slacken the speed or divert the course thereof in time to avoid striking him, although in the exercise of ordinary care she could have done so.

6. That the defendant at the time and place carelessly and negligently and wantonly failed and neglected to warn or apprise the plaintiff, by horn or otherwise, of her approach to the intersection, although in the exercise of ordinary care she could and should have done so.

The defendant, by way of answer, admits that at the times mentioned in the petition Rush Boulevard was a duly dedicated public street in the city of Youngstown, Ohio, extending in a northerly and southerly direction, the center of the street being occupied by a park strip dividing the north and south bound traffic except at intersections, one of which is Lowell Avenue, a duly dedicated public street in the city of Youngstown extending in a westerly direction from Rush Boulevard; admits that on or about the 6th day of August, 1935, at about ten o'clock, the plaintiff was a passenger in an automobile being operated in a northerly direction on Rush Boulevard, and that the defendant was operating her automobile in a southerly direction on Rush Boulevard, and that the automobile in which plaintiff was riding came into collision with the automobile operated by the defendant; admits that as a result of the collision the plaintiff suffered some injuries, but defendant denies that the collision occurred in the manner or from the causes set forth in plaintiff's petition, and denies that damages were sustained or injuries suffered by the plaintiff to the extent set forth in his petition, and then denies each and every and all of the statements and allegations contained in the plaintiff's petition except such as are specifically admitted to be true. As a second defense alleges that the occurrence set forth in plaintiff's petition was brought about solely and proximately by the neglect of the operator of the automobile in which plaintiff was riding and that the damages sustained, if any there were, and the injuries suffered, if any there were, were caused solely and proximately by the neglect of the operator of the automobile in which plaintiff was riding.

To this answer a reply was filed by the

plaintiff which is in the nature of a general denial except admissions therein.

It is urged as ground of reversal:

1. That the verdict is excessive and the judgment was against the weight of the evidence.

The evidence indicates that plaintiff received an injury to his left chest; that he had sharp pains in his lower left chest; that the fifth, sixth and seventh ribs on the left side were cracked, causing an expansion of the ribs and severe pain. It appears from the evidence that this also involved the pleura of his chest, and plaintiff still complains of catching pain in his side, which the doctor explained as adhesions to the layers of the pleura caused by scar tissue. The doctor testified that this condition was probably permanent due to scar tissue. He also suffered an injury to his left wrist. He had brush burns and contusions on his left hip and on his right knee, and he testifies that his kidneys have bothered him and sometimes give him trouble. He also had brush burns on the forehead and scalp, and claims he suffers from headache and dizziness and numbness in his left hand down in the lower part of his hand in the region of the third and fourth fingers, and claims he can not grip as he did before the injury and that this injury affects his ability to do the work in which he is engaged as railroad clerk for the Pennsylvania Railroad Company, which requires him to crawl over the cars in checking them; and that the injury to the hand was diagnosed by one of the doctors as one involving the ulnar and median nerve fibre; that at times he has a warm sensation and again a cold sensation and pin pricking; that for three weeks after the accident he was confined to his bed under treatment and that he sustained a severe nervous shock.

With this testimony in the record we are not inclined to disturb the jury's finding and to hold that the verdict was excessive. That was purely a question for the jury to determine and we cannot say under the circumstances that it is excessive or that the case should be reversed because of excessiveness.

We have also examined the record in connection with the error urged that the verdict is against the manifest weight of the evidence, and we are of the opinion that the verdict is not manifestly against the weight of the evidence.

Now, it is further urged that the trial court erred in refusing to admit certain evidence which it is claimed was prejudicial to defendant. The following questions were propounded by counsel for the defendant and the following answers made thereto:

"Q. Mr. Duffy, you told this jury yesterday that as the car in which you were riding was crossing Rush Boulevard you saw the Bonnell car coming. That is right, is it?

A. Yes, sir.

Q. Do you recall having testified differently about that fact?

A. No sir.

Q. I will ask you if these questions were asked and these answers given by you in the former trial: Q. How many times did you see this other car coming in your direction? Just once? A. Just once. Q. You did not look after that, after you looked just once to see it? A. I looked and it was far enough away, I figured he probably could go. Q. And you did not look again, is that right? A. No. Q. Now do you recall those questions and those answers?

A. Well to the best of my knowledge I have a recollection of it, yes.

Q. Now which is the correct version, the version you gave in the other trial or what you told this jury yesterday?

A. This jury, yesterday.

Q. Has something occurred between the last trial and the trial yesterday to change your mind?

A. No sir.

Q. Is your recollection better today than it was a month ago?

A. I wouldn't say so.

MR. DYSON: I object to this line of questioning.

COURT: If it is different testimony the question is proper. If it is not different testimony it is improper. I take it it is for you gentlemen to decide whether it is different or not. Eventually the jury will decide.

MR. BECKER: That is right, Your Honor.

COURT: You mean it is different?

MR. BECKER: In my opinion it is and in your opinion it is not. I am simply asking the court to decide that.

COURT: Do you withdraw it or insist?

MR. BECKER: I insist on the question.

MR. DYSON: I object to it Your Honor.

COURT: Sustained."

Certainly defendant can not complain with reference to plaintiff's testimony which he claims was given at a former trial, for the reason that the plaintiff did admit that he did have a recollection of testifying as claimed by counsel for the defendant at the former trial, which testimony was quoted to the plaintiff and he testified that the statement that he made to the jury on the day before was the correct testimony. It appears that the objection was to the question:

"Q. Is your recollection better today than it was a month ago?"

Before any objection was made the answer was:
"A. I wouldn't say so."

We think the court was not in error in sustaining the objection to this particular question. However, counsel for defendant urges to this court that the trial court held the entire line of questioning with reference to testimony plaintiff had given in a former trial was not competent. As we view this record we do not think that was the question before the court, for it is quite clear that if plaintiff testified contrary in a former trial to the testimony given at this trial, such questions were proper and competent, as bearing on his credibility. However that may be, nothing was dictated into the record as to what was testified to by plaintiff in a former trial, and the questions that were propounded relative to testimony that plaintiff gave in a former trial were fully answered. There was no reversible error in this regard.

The last error urged is that the trial court committed error in its charge to the jury. An examination of the record discloses that the court did err in his charge to the jury in that in reciting to the jury the provision of §12603 GC stated:

"It shall be prima facie unlawful for the operator of a motor vehicle to drive same at a speed not exceeding the following: Twenty miles per hour in the business or closely built up portions of the municipal corporation and thirty-five miles per hour in all other portions of the municipality."

This is clearly erroneous, as the statute provides that it shall be prima facie **lawful** for the operator of a motor vehicle to drive same at a speed not exceeding the following: Twenty miles per hour in the business or closely built up portions of a municipal corporation, and thirty-five miles per hour in all other portions of a municipal corporation.

Clearly it was error and prejudicial error to charge the jury that it was unlawful to operate a motor vehicle not to exceed twenty miles per hour in the business or closely built up portions of a municipal corporation, or thirty-five miles per hour in all other portions thereof. For the giving of this instruction this cause must be reversed and remanded for a new trial.

Now, it is further urged that the court erred in charging that portion of §12603 GC, relating to the assured clear distance ahead. That portion of the section reads as follows:

"No person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

That portion of §12603 GC means exactly what it says; that one shall not drive any motor vehicle at a greater rate of speed than will permit him to stop it within the assured clear disance ahead. Of course this refers to a discernible object upon the highway. If we considered the testimony of defendant alone that the car operated by Tarrantino darted out directly in front of her so that she could not have possibly stopped in time to have avoided the accident, it is quite clear that this section would not apply, as there would be no doubt a legal excuse for a violation of this provision.

However, there is other testimony in the record and if the car was crossing in front of her and was in her path so that she did not have an assured clear distance ahead, then this statute was applicable. Tarrantino testified that he stopped his car before he attempted to cross the south traffic lane on Rush Boulevard, looked north and saw defendant's car coming about three hundred feet north of the intersection; that he thought he had time to cross and proceeded so to do and the collision occurred, according to his testimony, when the front end of his car had entered Lowell Avenue. That is, his car was about four

508

feet into Lowell Avenue west of the west curb of Rush Boulevard. This testimony of Tarrantino was almost identical with that of plaintiff. Both Tarrantino and plaintiff testified that defendant was travel-ling about forty to forty-five miles per hour, and if their testimony be correct and the jury had a right to believe their testimony in preference to the testimony of the defendant, certainly if the plaintiff and Tarrantino could at the time that their car was standing still see the defendant approaching some two hundred and fifty to three hundred feet to the north, the defendant should have seen, or in the exercise of ordinary care could have seen the Tarrantino car proceeding across Rush Boulevard and she was approaching the Tarrantino car, the car would certainly be a visible object in the highway and under this statute it would have been her duty to have been operating her car so that she could have stopped within the assured clear distance ahead. We do not think under all of the evidence in this case the court was in error in charging the assured clear distance ahead statute, and that the section was applicable.

Now, it has been urged that the defendant had the right of way at this intersection. There can be no question that defendant, who was approaching the Tarrantino car from the right, under the statute had the right of way to proceed uninterrupted-ly provided she was at the time approaching the intersection in a lawful manner. If she violated any statutes which this court gave, including the assured clear distance ahead statute, she would not be approaching in a lawful manner, and therefore her pref-erential right of way would be lost and the common law rule would prevail; that is, the one who reached the intersection first would have the right to proceed.

These were all factual questions for the jury to determine from the evidence and we are of the opinion that the court was not in error except as herein indicated, in charging the various speed statutes as given in his charge to the jury. However, as hereinbefore suggested, this cause must be reversed for the error hereinbefore indicated.

Judgment reversed and cause remanded to the Court of Common Pleas..

ROBERTS and NICHOLS, JJ, concur.